IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

UNITED STATES OF AMERICA

vs.   CASE NO.: 4:06cr66-SPM

MIGUEL DIAZ PIMENTEL,

     Defendant.
_____/

### ORDER DENYING MOTION TO SUPPRESS

     Defendant Miguel Diaz-Pimentel's Motion to Suppress Evidence (doc. 19) was heard on October 16, 2006.  Defendant seeks to suppress the alleged counterfeit alien registration card, which he is charged with possessing, and all other fruits of the search and seizure of Defendant that occurred on August 17, 2006 at the Marcus Meadow Trailer Park in Tallahassee, Florida.

     In his motion, Defendant states that a law enforcement officer first seized his wallet, without probable cause and without his consent, and found inside the alleged counterfeit alien registration card.  Defendant states that he was questioned afterward and truthfully answered where he was from, what he was doing in the United States, and how long he had been here.  A different order of events, however, was revealed through Defendant's testimony at the suppression hearing.  Defendant's testimony has a material impact on his

argument for suppression.

At the suppression hearing Defendant testified that he was questioned by law enforcement first, then his wallet was seized. At the hearing, Defendant explained that he was walking to a taco stand located within the trailer park. A Caucasian man dressed in casual clothing tapped him on the shoulder, spoke to him in English, and motioned for him to follow. Defendant presumed that the person was a law enforcement officer because uniformed officers and patrol cars were at the trailer park. Although Defendant did not know it at the time, the officers were at the trailer park to execute a search warrant.[1] Several agents from Immigrations and Customs Enforcement ("ICE") were present to secure the perimeter of the trailer being searched.

Defendant explained that he believed some type of crime had been committed in the area and that the officer would search him for weapons or drugs and, finding none, Defendant would be released. Defendant, however, was directed to sit on a bench where two women were sitting.[2] A bilingual ICE agent, Oscar Gonzalez, was standing nearby.

Defendant testified that Agent Gonzalez first asked Defendant where he

---

[1] The warrant was issued pursuant to an unrelated illegal immigration investigation.

[2] Another man was later directed to sit on the bench, but he only sat for a short time before running away. He was never placed in custody.

was from.  Defendant replied that he was from Mexico.  Agent Gonzalez asked Defendant what he was doing in the United States.  Defendant replied that he was working.  Agent Gonzalez asked Defendant how long he had been working in the United States.  Defendant answered four years.  Agent Gonzalez asked Defendant if Defendant had permission to work or be present in the United States.  Defendant answered no.  According to Defendant, Agent Gonzalez then asked Defendant for his papers, patted Defendant down, removed Defendant's wallet, and took the alleged counterfeit alien registration card.[3]

From these facts, there is no basis for suppressing the alleged counterfeit alien registration card or any other evidence obtained as result of the encounter.  At the time Defendant claims Agent Gonzalez took the card, Defendant had already admitted to Agent Gonzalez that Defendant had been working in the

---

[3] Agent Gonzalez's testimony was different from Defendant's testimony, but the difference is not material to the Court's ruling.  Under either version of events, there is no basis to suppress the evidence.

According to Agent Gonzalez, he was called by an ICE officer to the area where Defendant, two women, and another man were standing.  Defendant already had his alien registration card in his hand and presented the card to Agent Gonzalez.  Agent Gonzalez never took Defendant's wallet.  From a casual inspection of the alien registration card, Agent Gonzalez recognized that the card was counterfeit.  If Agent Gonzalez's testimony is credited as true, then Defendant voluntarily presented his alien registration card and there would be no basis for suppressing the card.  Information volunteered is generally admissible.  See Miranda v. Arizona, 384 U.S. 436, 478 (1966) ("Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today.")

CASE NO.: 4:06cr66-SPM

United States but had no permission to work or be present in the United States.[4] Defendant's admission provided probable cause to arrest Defendant for violating federal immigration laws. The search of Defendant's person afterward, including his wallet, was valid as a search incident to arrest. United States v. Robinson, 414 U.S. 218, 234-236 (1973). Accordingly, it is

ORDERED AND ADJUDGED that Defendant's Motion to Suppress Evidence (doc. 19) be and hereby is denied.

DONE AND ORDERED this 27th day of October, 2006.

*s/ Stephan P. Mickle*
Stephan P. Mickle
United States District Judge

---

[4] Defendant does not argue that his admission was the product of an unlawful detention. If he had, however, the argument would not be successful. The circumstances surrounding Defendant's questioning indicate a voluntary encounter between Agent Gonzalez and Defendant. See I.N.S. v. Delgado, 466 U.S. 210, 216 (1984) ("[I]nterrogation relating to one's identity or a request for identification . . . does not, by itself, constitute a Fourth Amendment seizure.") At most, Defendant was subject to an investigatory detention. 8 U.S.C. § 1357(a)(1), Title 8 C.F.R. § 287.5(a). The ICE agent had reasonable suspicion to support a detention based on information received concerning illegal aliens in the area, the arrest of others in the same location for immigration violations, Defendant's inability to speak English, and the search warrant being executed a short distance away.